# APPENDIX A:

## March 3, 2017 Order
## Western District of Missouri

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-08001-CV-SJ-GAF** |
| | ) | **Crim. No. 05-06002-CR-SJ-GAF** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

Presently before the Court is Movant Lisa M. Montgomery's ("Movant" or "Montgomery") Amended Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. (Civ. Case,[1] Doc. # 71 ("2255 Mtn")). Respondent United States of America (the "Government") opposes. (Civ. Case, Doc. # 140 ("Gov't Resp.")). On December 21, 2015, the Court issued its Order denying Movant's Motion to Vacate on grounds I – IV, VIII – XI, XIV, XVI – XVII, and XIX – XXI, and granting an evidentiary hearing on grounds V – VII, XII – XIII, XV, XVIII, and XXII. (Civ. Case, Doc. # 173 ("12/21/2015 Order")). The evidentiary hearing commenced on October 31, 2016, and concluded on November 10, 2016, after which closing arguments were heard. (Civ. Case, Docs. ## 201-209). The Court then took the case under advisement. (Civ. Case, Doc. # 209). For the reasons set forth below, Movant's 2255 Motion to Vacate is DENIED on grounds V – VII, XII – XIII, XV, XVIII, and XXII, and thus, DENIED in its entirety.

[1] "Civ. Case" refers to the present civil case, Case No. 12-08001-CV-SJ-GAF.

Movant's treating psychiatrist at CCA, prior to Movant's trial. Trial counsel called Dr. McCandless to testify regarding her experiences with Movant during the course of treatment. The Government conversely contends that Dr. McCandless was an effective witness. (Gov't Resp., pp. 118-19).

Movant contends that trial counsel rushed Dr. McCandless's preparation. (2255 Mtn, p. 186-88). Movant points to the transcript of the Government's cross-examination of Dr. McCandless to support her assertion. (*Id.*). During the cross-examination, the Government played recorded calls from Movant's time at CCA in which Movant joked with her husband about not being entirely truthful with Dr. McCandless. (Trial Tr. 2113-14). The Government offered the calls as impeachment evidence against Dr. McCandless's testimony. (*Id.* at 2112). Movant argues that these phone calls damaged Dr. McCandless's standing with the jury. (2255 Mtn, p. 188).

Movant's argument that Dr. McCandless was a disastrous witness for her defense is contradicted by a wide range of evidence. Close review of the transcript shows that Duchardt anticipated the attempt to impeach Dr. McCandless and laid foundation to rebut the attempt. (Tr. at 2084-85). Further, Dr. McCandless's testimony advanced numerous important facts that were crucial to Movant's defense. Dr. McCandless visited with Movant dozens of times during Movant's stay at CCA, and Dr. McCandless witnessed Movant progress through various stages of mental illness. Dr. McCandless testified to Movant being placed on suicide watch; Movant's intense mood swings, bipolar disorder, and severe depression; as well as Dr. McCandless's eye toward wanting to evaluate Movant for suffering from psychotic episodes. (*Id.* at 2068-74). Trial counsel was not ineffective simply because the Government attempted to impeach Dr. McCandless's credibility.

she now believes should have been her defense strategy. At trial, counsel presented a first phase NGRI defense based on a theory that Movant suffered from pseudocyesis, which caused her to go into a delusional and dissociative state. (*See generally* Trial Tr. 2065-2439). Movant now argues trial counsel should not have presented an NGRI defense and should have focused solely on mitigation evidence for the penalty phase. Movant contends the experts her habeas counsel located were better suited for this trial strategy.

However, as thoroughly discussed above, trial counsel's decision to move forward with an NGRI defense centered on pseudocyesis and continue the theme of her obsession with pregnancy through the penalty phase was a reasonable trial strategy, and thus, virtually unchallengeable. *See Weaver v. United States*, 793 F.3d 857, 860 (8th Cir. 2015). The experts Movant presented at the evidentiary hearing as examples of who should have been used at trial would not have supported the pseudocyesis diagnosis and would have overlapped with testimony presented by other experts. *See Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002) ("[F]ailure to present cumulative evidence is neither contrary to nor an unreasonable application of the governing principles found in *Strickland*."). Those experts are Jan Vogelsang, a clinical social worker who conducts biopsychosocial investigations; Dr. Charles Sanislow, a clinical neuropsychologist; Dr. Kate Porterfield, a clinical psychologist specializing in trauma associated with torture and sex crimes; Dr. George Woods, a clinical psychiatrist with a focus in psychopharmacology; and Dr. Siddhartha Nadkarni, an expert in epilepsy, neurology, and psychiatry.

Movant's habeas counsel enlisted Jan Vogelsang to complete a biopsychosocial history of Movant and prepare a presentation based on information gathered that could have been presented during the trial. Movant asserts that an expert like Vogelsang was necessary to

A reading of the transcript shows that Dr. Kuncel's direct-examination went smoothly. (*Id.* at 3009-52). However, Dr. Kuncel's cross-examination did not go as well. Dr. Kuncel was often non-responsive and argumentative, and the Court admonished her to answer the questions as asked. (*Id.* at 3075, 3085-86). The Court specifically stated:

> If Mr. Duchardt believes that further explanation needs to be provided he will have an opportunity to question you about that again. You do not have to give a lengthy explanation to simple questions that are put to you. And I am instructing you to answer concisely and directly the questions that are provided to you and you need to understand that if the defendant's attorneys feel further explanation needs to be given they will have an opportunity to inquire of you in that regard.

(*Id.* at 3085-86). This passage reveals that the Court explained to Dr. Kuncel that Duchardt would clarify any issues raised on cross-examination. However, Dr. Kuncel's testimony continued to be somewhat evasive and argumentative. (*See generally id.* at 3087-3110). Additionally, Duchardt had no control over what questions were asked on cross-examination or how Dr. Kuncel answered them. On redirect, Duchardt rehabilitated Dr. Kuncel's testimony by allowing her to explain her answers to many of the issues raised during cross. (*Id.* at 3116-41). However, Duchardt did not ask her questions about pseudocyesis on redirect.

Dr. Kuncel is an experienced expert witness having worked on at least 40 capital cases. That she did not communicate to Duchardt that she felt unprepared is telling. It indicates that Dr. Kuncel was in fact prepared, but is having "buyer's remorse" based on the outcome of the trial. Dr. Kuncel was well aware that Drs. Ramachandran and Logan had diagnosed Movant with pseudocyesis. Duchardt helped her explain to the jury why she was not qualified to join in that diagnosis. Thus, it cannot be said that Duchardt's handling of and preparation for Dr. Kuncel's testimony regarding pseudocyesis was deficient.

However, even assuming Duchardt's preparation of Dr. Kuncel was deficient, Movant was not prejudiced. At the evidentiary hearing, the Court observed Dr. Kuncel react in much the