UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LISA MARIE MONTGOMERY, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 2:21-cv-00020-JPH-DLP |
| WARDEN OF USP TERRE HAUTE, IN., *et al.*, | ) ) ) ) |
| Respondents. | ) |

# EXHIBIT D
# LESLIE WHEAT, PH.D. DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LISA MARIE MONTGOMERY, | ) |
|           Petitioner, | ) |
|        v. | ) Case No. 2:21-cv-00020-JPH-DLP |
| WARDEN OF USP TERRE HAUTE, IN., *et al.*, | ) |
|           Respondents. | ) |

## DECLARATION OF DR. LESLIE WHEAT

I, Leslie Wheat, do hereby declare and state as follows:

1. I am currently employed by the Bureau of Prisons (BOP) as the Regional Psychology Services Administrator for the South Central Region, a position I have held since October 11, 2020. I have been employed by the BOP as a psychologist since October 2005.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. I have reviewed Ms. Montgomery's medical and mental health records, but I am not her treating psychologist and have not examined her in person for the purpose of this declaration.

3. I have been advised that in the above referenced case, Lisa Montgomery, Reg. No. 11072-031, has raised issues regarding her mental health status and the treatment she has received for her mental health conditions.

4. Ms. Montgomery has present mental health diagnoses of unspecified personality disorder, unspecified mood [affective] disorder, and posttraumatic stress disorder. Based on her mental health diagnoses, she is presently a mental health care level three inmate. As a care

      level three mental health inmate, she receives weekly mental health interventions.

5.     Ms. Montgomery is prescribed 20 MG Fluoxetine HCL to be taken once daily for depression, 15 MG Mirtzapine to be taken once daily for mood, and 2 MG Risperidone to be taken once daily for mood. Records indicate she has been compliant with her prescribed medications.

6.     On October 16, 2020, after Ms. Montgomery was notified by the FMC Carswell Warden of her scheduled execution date, she was assessed and placed on suicide watch as a precaution based on the gravity of the news of her scheduled execution date, her documented history of prior suicide attempts, impulsivity, and poor/maladaptive coping skills which placed her at significant risk of committing suicide. Since her placement on suicide watch, Ms. Montgomery has been evaluated daily by a licensed psychologist and has had frequent clinical contacts with her treating psychologist.

7.     Records indicate that Ms. Montgomery has consistently remained alert and oriented to person, time, place, and situation. Her grooming and hygiene have been generally described as good except when she indicated she declined a shower because she did not want to go through the process of exiting and returning to her room for a shower. Thought processes have been organized and goal-directed and content has been without abnormality or overt delusional content. Providers have consistently noted that there were no signs of psychosis or symptoms of severe mental illness observed when they have conducted the daily suicide watch contacts.

8.     On November 9, 2020, Ms. Montgomery indicated to both the psychologist conducting her suicide watch contact and to her treating psychologist that she had been told by her attorney not to talk to Carswell staff, including psychologists. She said her attorney had also told

her not to call her children but she "c[ould]n't do that." Psychology staff noted that Ms. Montgomery seemed to struggle with the decision not to fully engage with psychology and she was encouraged to discuss the situation with her attorney. On November 12, 2020, Ms. Montgomery told the psychologist conducting her suicide watch contact that she did not wish to speak with anyone from psychology because she believed her statements were being written down and would be used against her. Later on November 12, 2020, Ms. Montgomery told her treating psychologist that she would resume participation in individual therapy if her legal situation improved. Records after November 9, 2020, generally indicate that psychologists were able to engage Ms. Montgomery in discussions about property she would like to have added to her authorized property list, DVDs she would like to watch, and obtaining new books and puzzle sheets, but she would generally decline to engage in discussion about her emotions or psychological state. On November 17, 2020, she told her treating psychologist that despite her attorneys' advice not to engage with psychology staff she wanted to speak with him because she felt it would be helpful to process her emotions related to her execution. Thereafter, she generally engaged in some discussion of her emotional and psychological state with her treating psychologist and the psychologists conducting her suicide watch contacts.

9. Records reflect that Ms. Montgomery has engaged in a variety of in cell and out of cell activities that she indicated have been her primary coping skills. Ms. Montgomery has been reading books and the Bible, listening to music, watching DVDs, working on Sudoku and dot-to-to puzzles, making social and legal calls, engaging in in-person and video visits with her family, writing letters and cards to family, and participating in outdoor recreation (except when she indicated the weather was too cold or rainy).

10. Ms. Montgomery has expressed emotions to her suicide watch psychologists that she has primarily attributed to her legal situation and upcoming execution date. On December 25, 2020, Ms. Montgomery reported to the psychologist conducting her suicide watch contact that the night before she had a phone call with some attorneys who had volunteered to work on her case and they told her that her execution date had been vacated. She reported feeling positive and hopeful about the future in light of that news. Ms. Montgomery relayed that she had experienced mild sleep disturbances the previous night because she was "excited" about the news she had received. On December 26, 2020, she reported that she had participated in a "very positive" legal call the day before. On December 28, 2020, Ms. Montgomery reported to the psychologist conducting her suicide watch contact that she could not speak about her legal situation but described "good news" related to her execution date and indicated she believed it was unlikely she would be executed but understood it was still a possibility. She reported that she was limiting her verbal responses with the psychologist because she was "supposed to sit tight" according to her legal team. On December 30, 2020, she reported that she had slept poorly the night before because she was "thinking a lot about what is going to happen" related to her potential execution. She reported she was still optimistic but was becoming worried that she might still be executed. On December 31, 2020, Ms. Montgomery reported to the psychologist conducting her suicide watch contact that she was still optimistic but was distressed by the "small chance" she could be executed. She reported she was looking forward to legal calls that she had scheduled as well as her clemency hearing that was scheduled for January 6, 2021. On January 2, 2021, Ms. Montgomery reported that she had received "bad news" from her attorney the day before and claimed to be reading a book to "escape." She also

iv

acknowledged feeling sad about the news but hopeful that her attorneys would have additional strategies to preserve her life and indicated she was grateful for that and had a continued desire to fight her case. On January 3, 2021, the psychologist conducting the suicide watch contact discussed with her how she did not appear emotional despite the upcoming execution date and she acknowledged that she usually cries at night. She also indicated that she was hopeful and that "anything can change in a week's time." The psychologist noted that she was aware of all of the legal remedies her attorneys were pursuing and that she had a solid grasp of the timeline of events for the upcoming week including legal calls, hearings, and video visits with family. On January 4, 2021, Ms. Montgomery reported to the psychologist conducting her suicide watch contact that she had learned from her legal team that her execution date had been reinstated the past Friday and that she was "sad" and worried about the potential execution and the impact of the scheduled execution and the appeals process on her family. She reported being more tearful since Friday but that she was "okay." She reported that she was doing her best to remain hopeful as her clemency petition and other issues that could delay her execution were still pending. Ms. Montgomery also reported that she anticipated "a lot of up(s) and down(s)" as she was 8 days from her scheduled execution. On January 5, 2021, Ms. Montgomery reported a high level of distress during her suicide watch contact. She noted that she was sad and worried but "at peace" if she was executed. She also initiated a conversation about how she was preparing for her execution including her last meal and who would be at her execution to support her. She stated she was using her remaining days to stay in contact with her legal team and call each of her children. Ms. Montgomery reported crying more as she prepared to be transferred and executed but that she was also hopeful she would

v

receive clemency or a delay in her execution. The psychologist noted that her affect was flexible and congruent with the topics discussed and was more open when discussing her thoughts and emotions and initiated the conversation about her distress. On January 6, 2021, Ms. Montgomery reported ongoing sadness and worry about her potential execution but also reported numerous supportive interactions during personal and legal calls the day before. She said she had been reminded of how many people were "fighting" for her and that bolstered her hopefulness. She also reported gastrointestinal discomfort that she attributed to stress and anxiety. She reported her clemency hearing was scheduled for that day and that she was hopeful she would receive clemency. The psychologist conducting the suicide watch contact noted that Ms. Montgomery endorsed ongoing psychological and emotional distress, secondary to her scheduled execution. She was tearful but the tearfulness was less than the day before. On January 8, 2021, Ms. Montgomery reported to the psychologist conducting her suicide watch contact that she was experiencing psychological and emotional distress that was more intense than any distress she had experienced since her execution was scheduled. She described difficulty concentrating, gastrointestinal discomfort, sadness, worry, and guilt. She reported there still might be pending issues that would stop her execution, and she was hopeful. Ms. Montgomery was described as tearful throughout the contact and expressed guilt related to her crime and the impact of the sentence on those who care about her. She reported feeling "bad about everything." The psychologist noted that she appeared dysthymic with congruent, tearful affect. Ms. Montgomery described her sleep as poor but consistent with her baseline.

vii

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed this 10th day of January, 2021.

*Leslie Wheat, Ph.D.*
Leslie Wheat, Ph.D.
Federal Bureau of Prisons