## DECLARATION OF CAMILLE KEMPKE

I, Camille Kempke, M.D., hereby declare the following:

1. I am a Board Certified psychiatrist, currently retired.
2. I served as a psychiatrist at the Carswell Medical Center (Federal Bureau of Prisons) from February 2008 through September 2010.
3. In the course of my employment, I was the treating psychiatrist for Lisa Montgomery. Initially I saw her on the M-3 (mental health segregation) unit and later I treated her after she was housed in the admin unit.
4. When Mrs. Montgomery arrived at Carswell, she carried a bipolar diagnosis. She was medicated with Depakote but was not doing well psychiatrically.
5. She presented as disheveled and unclean. I had a hard time getting her to answer my questions or to come to the door to talk to me.
6. I initially thought that Mrs. Montgomery's presentation was due to depression over her conviction and death sentence, but I later learned that was not the case. After we began appropriately medicating her with antipsychotics, her affect, demeanor, and presentation changed dramatically. The information I later learned about Mrs. Montgomery's social history reinforced my revised assessment: Mrs. Montgomery's presentation was not simply depression, but psychotic depression.
7. I witnessed Mrs. Montgomery in an acute dissociative psychotic state at least two times.
8. When I treated her, her psychosis primarily manifested as crying, withdrawal, not responding to social cues, difficulty with concentration and deliberation, poor understanding of what she read, and hearing voices talking to her from the radio.
9. Mrs. Montgomery's counsel have informed me that she has been moved to death watch following the setting of her execution date.
10. They have described to me Mrs. Montgomery's current conditions of confinement, which are consistent with what I know to be the suicide precautions used at Carswell.
11. Though BOP is currently ensuring that Mrs. Montgomery showers three times a week, it is my understanding that she does so as quickly as possible—generally in under the 2 minute timer in the inmate shower—to avoid a prolonged re-experiencing of the sensation of observation and vulnerability into which showering recapitulates her. According to her lawyers, Mrs. Montgomery endorses that showers always cause her to re-experience her childhood violation. She reports crying in the shower, not because it is a safe place to cry, but rather because the experience in the shower itself is so scary that she cannot withstand it. This is consistent with my observations when she exhibited extreme aversion to showering.
12. Mrs. Montgomery's counsel have described Mrs. Montgomery's current functioning, including that Mrs. Montgomery hears her dead mother's voice and is having nightmares. She cannot describe either the instructions of the auditory hallucinations or the nightmares, because they are too terrifying.

21

13. Counsel has related that since October 16, 2020, Mrs. Montgomery has experienced lapses of time, including more than one that was commented upon by a guard who observed Mrs. Montgomery sitting staring blankly for a prolonged period. Mrs. Montgomery had not been aware of doing so. Mrs. Montgomery has described other lapses, including reading several pages of a book and realizing she could not remember any of what she read, and writing a letter and then not being able to remember doing it. Mrs. Montgomery reports being unsure of what is real—saying that without access to her most trusted friend, she is unsure of what is happening to her, so she cannot assess whether her perceptions are skewed or not.
14. Per counsel, Mrs. Montgomery reports feeling outside herself—as if watching from a distance, and the sensation of existing in a house in her mind as she did when she was raped as a child. The fact that Mrs. Montgomery is re-experiencing the mental detachment that previously allowed her to survive chronic abuse and gang rape is clinically significant and reflects decompensation and a detachment from reality.
15. Counsel have described that Mrs. Montgomery believes she has received messages from God in a dot-to-dot drawing that she was provided by the BOP. Mrs. Montgomery's counsel have described Mrs. Montgomery finding messages in a feather, a sensation of clouds parting and warmth from the sun, and in seeing the moon in a location she found uncanny. Without more information, it is impossible to know whether these were true hallucinations or delusions of reference. In either case, these indicate that Mrs. Montgomery is psychotic.
16. The difficulties in reality testing described above are similar to those Mrs. Montgomery exhibited before I prescribed Risperdal; this means the beneficial effect of the Risperdal is insufficient to control her symptoms.
17. It is my professional opinion to a reasonable degree of medical certainty that, based on my knowledge of Mrs. Montgomery's history of psychosis and the psychotic symptoms reported by counsel, she is currently unable to rationally understand the government's rationale for her execution.

I declare under penalty of perjury that the foregoing is true and correct.

_Camille Kempke MD_
Camille Kempke

Signed this 10th day of January, 2021.