UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LISA MARIE MONTGOMERY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-00020-JPH-DLP |
| | ) | **CAPITAL CASE** |
| WARDEN OF USP TERRE HAUTE, IN, *et al.* | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

## EMERGENCY MOTION FOR STAY

Pursuant to Federal Rule of Civil Procedure 62(d) and consistent with Federal Rule of Appellate Procedure 8(a)(1), Respondents respectfully move for a stay pending appeal of this Court's January 11, 2021 Order Granting Motion to Stay Execution Pending a Competence Hearing, [Dkt. 17]. Because the time designated for execution is less than 24 hours away, Respondents intend to simultaneously move the Court of Appeals for a stay. Respondents recognize that the Court has considered and rejected arguments they present in this motion. But Federal Rule of Appellate Procedure 8(a)(1) requires Respondents to first move in this Court for a stay of the orders pending appeal before seeking a stay in the Court of Appeals. Accordingly, for the reasons stated below and in more detail in Respondents' Opposition [Dkt. 14] to Montgomery's Corrected Petition for Writ of Habeas Corpus, and Motion for Stay, Respondents respectfully request that the Court stay its Order pending appeal.

## ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 62(d) authorizes a district court to stay an order pending appeal. District courts considering a motion for such a stay consider the same factors as those governing a motion for a preliminary injunction: "(1) whether the stay applicant has made a strong

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Before seeking a stay from the Court of Appeals, a party must ordinarily move first in the district court for an order suspending an injunction pending appeal. Fed. R. App. P. 8(a).

## I. RESPONDENTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue influence from the federal courts. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). In considering a request for stay of execution, the Seventh Circuit has instructed courts to consider "two critical factors": "(1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert v. Bass*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam).

*First*, Montgomery unreasonably delayed her request for relief. Montgomery's *Ford* claim has been ripe at least since the date of her execution was set in October, nearly three months ago. She suggests no legitimate reason to excuse her delay in asserting it. Her petition relies almost entirely on evidence offered during her trial and post-conviction litigation, which has been available for years. She stated on October 28 her intent to claim incompetency to be executed. Montgomery's unreasonable delay is, by itself, a sufficient and necessary reason to deny relief. *See Bedford v. Bobby*, 645 F.3d 372, 377 (6th Cir. 2011) (vacating the district court's stay when the inmate first raised his *Ford* claim eight days before his execution); *see generally Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 & n.5 (2019).

*Second*, Montgomery has failed to make the constitutionally required substantial threshold showing of incompetency. A prisoner competent to be tried is presumed competent to be executed and must make a substantial threshold showing to the contrary to be entitled to a hearing. Montgomery's proffered evidence falls far short. Montgomery points to prior diagnoses of mental illness. But those past diagnoses have little bearing on Montgomery's current mental state, and in any event the question is not whether she is mentally ill but rather whether, as a result of mental illness, she is incapable of rationally understanding the reason for execution. Montgomery relies upon the opinions of purported experts who opine in conclusory fashion that she is incompetent. Neither of these "experts" have communicated or interacted with Montgomery since 2016. Their opinions of Montgomery's current mental state derive primarily from things Montgomery's lawyers claim Montgomery has said to them. This Court should reject opinions predicated on such a basis, particularly because Montgomery has a history of deception, and her lawyers have been admonished by another federal judge for unprofessional conduct while representing Montgomery in post-conviction proceedings. *See*, *e.g.*, [Dkts. 13-3, 13-4]. Montgomery's proffered opinions are also unpersuasive because they do not address the relevant question—whether mental health problems prevent Montgomery from having a rational understanding of the government's reasons for resorting to capital punishment—and both the opinions and attorney hearsay are directly contradicted by evidence of Montgomery's current mental state as reflected in transcripts of her recent phone calls [Dkt. 13-6], and current mental health records which show that Montgomery presents no signs of significant mental illness, much less psychosis. [Dkt. 13-5.]

Montgomery's due process claim is equally meritless. A prisoner is not entitled to a hearing of any kind on whether she is competent to be executed unless she makes "a substantial threshold showing" of incompetency. *Panetti*, *v. Quarterman*, 551 U.S. 930, 949 (2007) ("Once a prisoner

seeking a stay of execution has made a substantial threshold showing of insanity, the protection afforded by procedural due process includes a fair hearing in accord with fundamental fairness.") (internal quotation marks omitted). Montgomery has made no such showing here. And the government has not prevented Montgomery from seeking to acquire evidence about her mental health. [Dkts. 13-1, 13-2, 13-7, 13-11] BOP has been at all times willing to afford Montgomery's experts access to her, either in-person or through videoconferencing. *Id.* Montgomery's attorneys have simply never asked for such access. The record establishes the fact that even if particular experts have been unwilling to travel to meet with Montgomery due to COVID, that has not precluded another competent expert from doing so. Any suggestion that Montgomery believes an in-person evaluation is necessary to evaluate competency is belied by her own "experts," who purport to be able to opine on her competency based on hearsay from her attorneys.

## II. THE BALANCE OF HARMS WEIGHS IN FAVOR OF ENTRY OF A STAY OF THE ORDER

The balance of harms favors a stay of this Court's order. Respondents, the public, and the victims of Montgomery's crime will suffer irreparable harm absent a stay. The Supreme Court has repeatedly recognized the Government and the victims' compelling interest in the timely enforcement of a death sentence. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998); *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992); *see also Bucklew v. Precythe*, 139 S.Ct. 1112, 134 (2019) ("The people of Missouri, the surviving victims of [the condemned inmate's] crimes, and others like them deserve better. Even the principal dissent acknowledges that the long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive." (citation omitted)). Montgomery delayed in raising her claims, which has prevented their timely consideration. Moreover, the harm to the government and the public is not mitigated in a meaningful way by the fact that the postponement of Montgomery's

execution may last for only a short period. Even minor delays impose serious psychological harms on the families and communities of the victims.[1] In addition, the logistical challenges associated with conducting an execution—which are substantial in any case—are particularly acute here. [Dkt. 13-8, R. Winter Decl.] Montgomery was transferred from Texas to Indiana on January 11, 2021. Several members of the victims' family from Missouri, who have waited more than 16 years for justice, are expecting to see justice finally carried out, in person, in less than 24 hours. *Id.*

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court stay its January 11, 2021 Order Granting a Stay of Execution [Dkt. 17] pending Respondents' appeal of this Court's January 11, 2021, Order Granting a Stay of Execution Pending a Competence Hearing.

Respectfully submitted,

JOHN CHILDRESS
Acting United States Attorney

By: /s/Brian P. Casey
BRIAN P. CASEY
Special Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Fax: (816) 426-3126
Brian.Casey@usdoj.gov

*Attorneys for Respondents*

---

[1] *See* Alan Van Zandt, "People Gather in Skidmore to Remember Bobbie Jo Stinnett," (Dec. 9, 2020), https://www.kq2.com/content/news/People-in-Skidmore-gather-to-remember-Bobbie-Jo-Stinnett-573340761.html (noting candlelight vigil for Montgomery's victim on original execution date).

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2021, the foregoing was filed electronically through ECF/CM. On this same date, a copy of the foregoing was served electronically to all counsel of record through the Court's ECF/CM system.

<u>*s/ Brian P. Casey*</u>
Brian P. Casey
Special Assistant United States Attorney