# UNITED STATES DISTRICT COURT
## Southern District of Indiana

**Roger A. G. Sharpe, Clerk of Court**

Birch Bayh Federal Building
& U.S. Courthouse, Room 105
46 East Ohio Street
Indianapolis, IN 46204
(317) 229-3700

U.S. Courthouse, Room 104
921 Ohio Street
Terre Haute, IN 47807
(812) 231-1840

Winfield K. Denton Federal Building
& U. S. Courthouse, Room 304
101 NW Martin Luther King Blvd.
Evansville, IN 47708
(812) 434-6410

Lee H. Hamilton Federal Building
& U.S. Courthouse, Room 210
121 West Spring Street
New Albany, IN 47150
(812) 542-4510


January 11, 2021

Kelley J. Henry
FEDERAL PUBLIC DEFENDER TNM
810 Broadway, Suite 200
Nashville, TN 37203

Brian Patrick Casey
U.S. ATTORNEY'S OFFICE
400 E. 9th Street
Room 5510
Kansas City, MO 64106

RE: LISA MARIE MONTGOMERY v. WARDEN OF USP TERRE HAUTE, IN

CAUSE NO: 2:21-cv-00020-JPH-DLP

Dear Appellant and Appellee:

Please be advised that the Notice of Appeal filed in 2:21-cv-00020-JPH-DLP has been forwarded to the United States Court of Appeals for the Seventh Circuit. The Clerk of the Seventh Circuit will assign an appellate case number, docket the appeal, and notify case participants of the Seventh Circuit case number assigned to this matter.

Please review Seventh Circuit Rule 10 (enclosed) for guidance regarding record preparation.

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Roger A. G. Sharpe
Clerk of Court

By Rebekah Farrington, Deputy Clerk
812-231-1841

## Selected Rules for Reference

**CIRCUIT RULE 10. Preparation and Accessibility of Record in District Court Appeals**

**(a) Record Preparation Duties.**

**(1) Within 14 days of filing the notice of appeal the district court must ensure the district court docket is complete and made available electronically to the court of appeals.**

**(2) The clerk of the district court must prepare and hold any confidential record or exhibit not available electronically on the district court docket until requested by the court of appeals.**

**(3) Counsel must ensure, within 21 days of filing the notice of appeal, that all electronic and non electronic documents necessary for review on appeal are on the district court docket.**

(b) *Correction or Modification of Record.* A motion to correct or modify the record pursuant to Rule 10(e), Fed. R. App. P., or a motion to strike matter from the record on the ground that it is not properly a part thereof must be presented first to the district court. That court's order ruling on the motion must be included as part of the record and a notice of the order must be sent to the court of appeals.

(c) *Order or Certification with Regard to Transcript.* Counsel and court reporters are to utilize the form prescribed by this court when ordering transcripts or certifying that none will be ordered. For specific requirements, see Rules 10(b) and 11(b), Fed. R. App. P.

(d) *Ordering Transcripts in Criminal Cases.*

(1) *Transcripts in Criminal Justice Act Cases.* At the time of the return of a verdict of guilty or, in the case of a bench trial, an adjudication of guilt in a criminal case in which the defendant is represented by counsel appointed under the Criminal Justice Act (C.J.A.), counsel for the defendant must request a transcript of testimony and other relevant proceedings by completing a C.J.A. Form No. 24 and giving it to the district judge. If the district judge believes an appeal is probable, the judge must order transcribed so much of the proceedings as the judge believes necessary for an appeal. The transcript must be filed with the clerk of the district court within 40 days after the return of a verdict of guilty or, in the case of a bench trial, the adjudication of guilt or within seven days after sentencing, whichever occurs later. If the district judge decides not to order the transcript at that time, the judge must retain the C.J.A. Form No. 24 without ruling. If a notice of appeal is filed later, appointed counsel or counsel for a defendant allowed after trial to proceed on appeal in forma pauperis must immediately notify the district judge of the filing of a notice of appeal and file or renew the request made on C.J.A. Form No. 24 for a free transcript.

(2) *Transcripts in Other Criminal Cases.* Within 14 days after filing the notice of appeal in other criminal cases, the appellant or appellant's counsel must deposit with the court reporter the estimated cost of the transcript ordered pursuant to Rule 10(b), Fed. R. App. P., unless the district court orders that the transcript be paid for by the United States. A non-indigent appellant must pay a pro rata share of the cost of a transcript prepared at the request of an indigent co-defendant under the Criminal Justice Act unless the district court determines that fairness requires a different division of the cost. Failure to comply with this paragraph will be cause for dismissal of the appeal.

(e) *Indexing of Transcript.* The transcript of proceedings to be part of the record on appeal (and any copies prepared for the use of the court or counsel in the case on appeal) must be bound by the reporter, with the pages consecutively numbered throughout. The transcript of proceedings must contain a suitable index, as well as the following information:

(1) An alphabetical list of witnesses, giving the pages on which the direct and each other examination of each witness begins.

(2) A list of exhibits by number, with a brief description of each exhibit indicating the nature of its contents, and with a reference to the pages of the transcript where each exhibit has been identified, offered, and received or rejected.

(3) A list of other significant portions of the trial such as opening statements, arguments to the jury, and instructions, with a reference to the page where each begins.

When the record includes transcripts of more than one trial or other distinct proceeding, and it would be cumbersome to apply this paragraph to all the transcripts taken together as one, the rule may be applied separately to each transcript of one trial or other distinct proceeding.

(f) *Presentence Reports.* The presentence report is part of the record on appeal in every criminal case. The district court must maintain this report under seal, unless it has already been placed in the public record in the district court. If the report is under seal, the report may not be included in the appendix to the brief or the separate appendix under Fed. R. App. P. 30 and Circuit Rule 30. Counsel of record may review the presentence report but may not review the probation officer's written comments and any other portion submitted in camera to the trial judge.

(g) *Effect of Omissions from the Record on Appeal.* When a party's argument is countered by a contention of waiver for failure to raise the point in the trial court or before an agency, the party opposing the waiver contention must give the record cite where the point was asserted and also ensure that the record before the court of appeals contains the relevant document or transcript.

NOTE: The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

**Roger A. G. Sharpe, Clerk of Court**

Birch Bayh Federal Building
& U.S. Courthouse, Room 105
46 East Ohio Street
Indianapolis, IN 46204
(317) 229-3700

U.S. Courthouse, Room 104
921 Ohio Street
Terre Haute, IN 47807
(812) 231-1840

Winfield K. Denton Federal Building
& U. S. Courthouse, Room 304
101 NW Martin Luther King Blvd.
Evansville, IN 47708
(812) 434-6410

Lee H. Hamilton Federal Building
& U.S. Courthouse, Room 210
121 West Spring Street
New Albany, IN 47150
(812) 542-4510


January 11, 2021

RE: LISA MARIE MONTGOMERY v. WARDEN OF USP TERRE HAUTE, IN

CAUSE NO: 2:21-cv-00020-JPH-DLP

Dear Appellant:

A Notice of Appeal was filed in the above case on January 11, 2021. However, a "Docketing Statement" was not filed along with the Notice of Appeal, as required by Circuit Rule 3(c) of the U.S. Court of Appeals for the Seventh Circuit. A copy of the rule is attached for reference.

Pursuant to the Seventh Circuit Rule 3(c), the appellant must serve on all parties a docketing statement and file said statement with the Clerk of the Seventh Circuit within seven (7) days of the filing of the Notice of Appeal.

IMPORTANT: Please do not submit the docketing statement to the U.S. District Court. The docketing statement must be filed electronically with the Seventh Circuit pursuant to Circuit Rule 25. If the appellant is proceeding pro se, then the docketing statement should be filed on paper by mailing the same to the address below:

Christopher Conway, Clerk
United States Court of Appeals
219 South Dearborn Street, Suite 2722
Chicago, IL 60604

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Roger A. G. Sharpe,
Clerk of Court

By Rebekah Farrington, Deputy Clerk
812-231-1841

## **Selected Rules for Reference**

CIRCUIT RULE 3. Notice of Appeal, Docketing Fee, Docketing Statement, and Designation of Counsel of Record

(a) *Forwarding Copy of Notice of Appeal.* When the clerk of the district court sends to the clerk of this court a copy of the notice of appeal, the district court clerk shall include any docketing statement. In civil cases the clerk of the district court shall include the judgments or orders under review, any transcribed oral statement of reasons, opinion, memorandum of decision, findings of fact, and conclusions of law. The clerk of the district court shall also complete and include the Seventh Circuit Appeal Information Sheet in the form prescribed by this court.

(b) *Dismissal of Appeal for Failure to Pay Docketing Fee.* If a proceeding is docketed without prepayment of the docketing fee, the appellant shall pay the fee within 14 days after docketing. If the appellant fails to do so, the clerk is authorized to dismiss the appeal.

(c)(1) *Docketing Statement.* The appellant must serve on all parties a docketing statement and file it with the clerk of the district court at the time of the filing of the notice of appeal or with the clerk of this court within seven days of filing the notice of appeal. The docketing statement must comply with the requirements of Circuit Rule 28(a). If there have been prior or related appellate proceedings in the case, or if the party believes that the earlier appellate proceedings are sufficiently related to the new appeal, the statement must identify these proceedings by caption and number. The statement also must describe any prior litigation in the district court that, although not appealed, (a) arises out of the same criminal conviction, or (b) has been designated by the district court as satisfying the criteria of 28 U.S.C. §1915(g). If any of the parties to the litigation appears in an official capacity, the statement must identify the current occupant of the office. The docketing statement in a collateral attack on a criminal conviction must identify the prisoner's current place of confinement and its current warden; if the prisoner has been released, the statement must describe the nature of any ongoing custody (such as supervised release) and identify the custodian. If the docketing statement is not complete and correct, the appellee must provide a complete one to the court of appeals clerk within 14 days after the date of the filing of the appellant's docketing statement.

(2) Failure to file the docketing statement within 14 days of the filing of the notice of appeal will lead to the imposition of a $100 fine on counsel. Failure to file the statement within 28 days of the filing of the notice of appeal will be treated as abandonment of the appeal, and the appeal will be dismissed. When the appeal is docketed, the court will remind the litigants of these provisions.

(d) *Counsel of Record.* The attorney whose name appears on the docketing statement or other document first filed by that party in this court will be deemed counsel of record, and a separate notice of appearance need not be filed. If the name of more than one attorney is shown, the attorney who is counsel of record must be clearly identified. (There can be only one counsel of record.) If no attorney is so identified, the court will treat the first listed as counsel of record. The court will send documents only to the counsel of record for each party, who is responsible for transmitting them to other lawyers for the same party. The docketing statement or other document must provide the post office address and telephone number of counsel of record. The names of other members of the Bar of this Court and, if desired, their post office addresses, may be added but counsel of record must be clearly identified. An attorney representing a party who will not be filing a document shall enter a separate notice of appearance as counsel of record indicating the name of the party represented. Counsel of record may not withdraw, without consent of the court, unless another counsel of record is simultaneously substituted.

NOTE: The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LISA MARIE MONTGOMERY,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF USP TERRE HAUTE, IN, *et al.*<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:21-cv-00020-JPH-DLP |

**RESPONDENTS' NOTICE OF APPEAL**

Notice is hereby given this 11th day of January, 2021, that Respondents in this action appeal to the United States Court of Appeals for the Seventh Circuit from the Order Granting Motion to Stay Execution Pending a Competence Hearing, [Dkt. 17], in which the Court granted Petitioner's Motion to Stay Execution, [Dkt. 12.]

Respectfully submitted,

JOHN CHILDRESS
Acting United States Attorney

By: */s/Brian P. Casey*
BRIAN P. CASEY
Special Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Fax: (816) 426-3126
Brian.Casey@usdoj.gov

*Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2021, the foregoing was filed electronically through ECF/CM. On this same date, a copy of the foregoing was served electronically to all counsel of record through the Court's ECF/CM system.

*s/ Brian P. Casey*
Brian P. Casey
Special Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LISA MARIE MONTGOMERY,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF USP TERRE HAUTE, IN, et al.<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:21-cv-00020-JPH-DLP |

**ORDER GRANTING MOTION TO STAY EXECUTION PENDING A COMPETENCE HEARING**

Petitioner Lisa Montgomery is scheduled to be executed tomorrow, January 12, 2021, at the United States Penitentiary in Terre Haute, Indiana (USP – Terre Haute). Ms. Montgomery has filed a petition for writ of habeas corpus pursuant to 18 U.S.C. § 2241, alleging that she is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986), and a motion to stay execution. Dkt. 1; dkt. 12. For the reasons that follow, the motion to stay is **GRANTED**.

## I. INTRODUCTION

In 2007, a jury convicted Ms. Montgomery of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1). After hearing additional evidence at the sentencing phase of the trial, the jury found that the government had proven aggravating factors that warranted imposition of the death penalty, including that Ms. Montgomery committed the offense in an especially heinous or depraved manner. Ms. Montgomery raised her mental state as a defense at trial and as a

basis for relief in post-conviction proceedings. The verdict and sentence imposed were upheld both on appeal and during post-conviction relief proceedings.

In this case, Ms. Montgomery does not further challenge the validity of the conviction or sentence imposed. Rather, the sole issue presented is whether the government may lawfully execute Ms. Montgomery in her current mental state. Ms. Montgomery's counsel contend that executing her would be unconstitutional because her current mental state makes her unable to understand why the government seeks to execute her. They ask the Court to stay the execution so that the Court can hold a hearing and make findings about Ms. Montgomery's current mental condition based on a fully developed record.

In support of her motion to stay, Ms. Montgomery presents evidence from three expert witnesses who have each either treated Ms. Montgomery or interviewed her on multiple occasions. They all discuss Ms. Montgomery's history of mental illness, the specific diagnoses and corresponding treatments, and their discussions with Ms. Montgomery's counsel regarding her recent behavior. They all conclude that Ms. Montgomery's perception of reality is distorted and that she is currently unable to rationally understand the government's rationale for her execution. Based on this evidence, the Court finds that Ms. Montgomery has made a strong showing that she will be able to make the threshold showing of insanity that requires a hearing.

## II. BACKGROUND

### A. Ms. Montgomery's Crime and Procedural Background

The following is a summary of Ms. Montgomery's crime, adapted from the Eighth Circuit's factual recitation on direct appeal. *United States v. Montgomery*, 635 F.3d 1074, 1079–80 (8th Cir. 2011).

Ms. Montgomery met Bobbie Jo Stinnett at a dog show in April 2004. Ms. Montgomery learned through an online message board dedicated to breeding rat terriers that Ms. Stinnett was pregnant. Despite undergoing a sterilization procedure more than a decade earlier, Ms. Montgomery began telling friends and family in the spring of 2004 that she was pregnant.

On December 15, 2004, Ms. Montgomery, using an alias, contacted Ms. Stinnett, expressing interest in purchasing a puppy from Ms. Stinnett. Ms. Montgomery went to Ms. Stinnett's house, where she strangled her and, using a kitchen knife, cut and removed Ms. Stinnett's baby girl. Ms. Stinnett was eight months pregnant at the time of her murder.

Ms. Montgomery called her husband, who was unaware of her sterilization, and told him that she had gone into labor while Christmas shopping and had given birth at a women's clinic. They took the baby home. The following day, law enforcement officials went to their home to speak with Ms. Montgomery. She initially told officers that she had given birth at home, but upon further questioning at the sheriff's office confessed to killing Ms. Stinnett, removing the fetus from Ms. Stinnett's womb, and abducting the child. The baby, who was in good health, was returned to her father.

Ms. Montgomery was charged in the United States District Court for the Western District of Missouri with kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1). *Id.* at 1081. Ms. Montgomery asserted the defense of insanity. *Id.* at 1082. Defense experts alleged that Ms. Montgomery suffered from depression, borderline personality disorder, post-traumatic stress disorder (PTSD), and pseudocyesis, a condition in which a woman falsely believes she is pregnant, associated with objective physical signs of pregnancy. *Id.* In October 2007, a jury rejected the insanity defense, convicted Ms. Montgomery of first-degree murder, and sentenced her to death.

Ms. Montgomery's conviction and sentence were affirmed on direct appeal. *Id.* at 1099. The Supreme Court declined review. *Montgomery v. United States*, 565 U.S. 1263 (2012).

In March 2012, Ms. Montgomery moved to vacate her conviction and sentence pursuant to 28 U.S.C. § 2255. *United States v. Montgomery*, No. 4:12-cv-8001-GAF (W.D. Mo.). On March 3, 2017, the district court denied relief and denied a certificate of appealability on all claims. *Id.*, dkt. 212. The Eighth Circuit denied leave to appeal, *Montgomery v. United States*, No. 17-1716 (8th Cir. Jan. 25, 2019), and the Supreme Court denied certiorari, *Montgomery v. United States*, 140 S. Ct. 2820 (May 26, 2020) and *Montgomery v. United States*, 141 S. Ct. 199 (Mem) (Aug. 3, 2020) (denying rehearing).

On October 16, 2020, the government set Ms. Montgomery's execution date for December 8, 2020. *United States v. Montgomery*, No. 5:05-cr-6002, dkt. 444 (W.D. Mo.). On November 19, 2020, the District Court for the District

of Columbia stayed the execution until at least January 1, 2021. *Montgomery v. Barr*, No. 20-cv-3261, 2020 WL 6799140, at *11 (D.D.C. Nov. 19, 2020). On November 23, 2020, the government set a new execution date of January 12, 2021. *United States v. Montgomery*, No. 5:05-cr-6002, dkt. 445 (W.D. Mo.). In December, the District Court for the District of Columbia held that the new date was unlawfully set. *Montgomery v. Rosen*, 20-cv-3261, 2020 WL 7695994 (D.D.C. Dec. 24, 2020). But the District of Columbia Court of Appeals summarily reversed that order on January 1, 2021, *Montgomery v. Rosen*, No. 20-5379 (D.C. Cir. Jan. 1, 2021), so the January 12, 2021 execution date remains in effect.

Ms. Montgomery's counsel filed the petition in this case days ago, on Friday January 8, 2021, and filed a corresponding motion to stay the next day. Pursuant to the briefing schedule entered by the Court on the evening of January 8, the government filed a response on January 10 and Ms. Montgomery's counsel filed a reply today.

### B. Ms. Montgomery's History of Trauma and Mental Illness

While Ms. Montgomery's current mental state is the issue in this case, her past trauma and diagnoses are relevant because her clinical history informs the experts' opinions regarding her current mental state.

Ms. Montgomery's childhood trauma was extreme and "consistent with torture." Dkt. 11-12 (Woods Decl. 2020). Her mother and stepfather were physically and emotionally abusive. Dkt. 11-5 at 42–43 (Porterfield Decl. 2016). Her mother found humor in the fact that Ms. Montgomery's first words as a

toddler were, "[d]on't spank me." *Id.* Her stepfather sexually assaulted her on a weekly basis for years. *Id.* at 43; *see also Montgomery*, 635 F.3d at 1080. Her mother's emotional abuse included sadistic acts such as taping Ms. Montgomery's mouth shut with duct tape for speaking and beating the family dog to death in front of Ms. Montgomery and her siblings. *Id.* at 43–44.

The prison psychiatrist who treated Ms. Montgomery in the three years preceding her trial diagnosed her with depression, bipolar disorder, and PTSD. Dkt. 11-10 at 2, 14–15. At trial, medical experts from both sides agreed that Ms. Montgomery suffered from depression, borderline personality disorder, and PTSD. *Montgomery*, 635 F.3d at 1082. One of Ms. Montgomery's experts, Dr. Logan, characterized Ms. Montgomery's illness as depressive disorder which "at times included psychotic features such as hallucinations." Dkt. 11-6 at 80 (Logan Report).

After her trial, Ms. Montgomery was placed at the Federal Medical Center, Carswell ("FMC Carswell"), a federal prison in Texas for female inmates with special mental health needs. Dr. Camille Kempke, Ms. Montgomery's treating psychiatrist at FMC Carswell between 2008 and 2010, witnessed Ms. Montgomery in "an acute dissociative psychotic state" at least twice. Dkt. 16-1 at ¶ 2–3. *Id.*

Two psychological experts hired by Ms. Montgomery's team in support of her § 2255 proceedings recounted the key role dissociation plays in Ms. Montgomery's mental functioning and provided declarations in support of the motion to stay in this action. Dr. Katherine Porterfield, who examined

Ms. Montgomery in 2016, is a clinical psychologist who has worked with survivors of torture and trauma for more than two decades. Dkt. 11-12 at 2 (Porterfield Decl. 2020); dkt. 11-5 at 39 (Porterfield Decl. 2016). In her opinion, Ms. Montgomery suffers from complex post-traumatic stress disorder[1] (CPTSD), complex partial seizures and brain impairment, depression, and bipolar disorder. Dkt. 11-12 at 2. Ms. Montgomery's "CPTSD is characterized by severe dissociative symptoms." *Id.* As Dr. Porterfield explained, "[d]issociation is a process of the human nervous system in which neurochemical reactions to excessive stress lead to alterations in consciousness and perceptions of senses, the environment, and the self. Dissociation represents a lowering of consciousness, *sometimes to the point of actual rupture of consciousness and awareness*." *Id.* at 2–3 (emphasis added).

Dr. Porterfield described the dissociative symptoms prevalent in Ms. Montgomery's functioning as follows: (1) confused thought process—"frequently confused thinking that indicated questions about the reality of certain events and perceptions in her past"; (2) disengagement—feeling "out of it" or as if she was in her own world and would forget what day it was or how she got places; (3) depersonalization—feeling detached from her own body or like she

[1] CPTSD is not a condition that is recognized by the Diagnostic and Statistical Manual of Mental Disorders. According to Dr. Porterfield, it is a "diagnostic category proposed for inclusion in the World Health Organization International Classification of Diseases, 11th version, and arrived at by consensus among a panel of international trauma experts." Dkt. 11-5 at 48. Because dissociative symptoms are included in the criteria for PTSD—which experts on both sides agree Ms. Montgomery has—the Court pays more attention to the symptoms described by Ms. Montgomery's experts rather than the diagnostic label of CPTSD or PTSD.

does not belong in her body; (4) derealization—feeling her surroundings are not familiar in some cases, not real; (5) identity dissociation—feeling like she has different people inside herself or like there are people inside who are talking to her; (6) memory disturbance—experiencing blank spells or loss of time; and (7) emotional constriction—having restricted or limited emotional experience. Dkt. 11-5 at 48–54.

Dr. George Woods, a physician with a specialty in neuropsychiatric consultations, conducted clinical evaluations of Ms. Montgomery, which included interviews and assessments of Ms. Montgomery's neurological status, in January and February 2013 and July and August 2016. Dkt. 11-6 at 1; dkt. 11-12 at 34. He observed that Ms. Montgomery has cerebellar[2] dysfunction and other brain impairments. Dkt. 11-6 at 5. Ms. Montgomery's symptoms consistent with impairment of the cerebellum include "distractibility, hyperactivity, impulsiveness, disinhibition, anxiety, irritability, ruminative and obsessive behaviors, dysphoria, and depression, tactile defensiveness and sensory overload, apathy, and childlike behavior." *Id.* Dr. Woods also diagnosed Ms. Montgomery with Bipolar I Disorder, Most Recent Episode Depressed, Severe with Psychotic Features." *Id.* at 19. Ms. Montgomery's brain impairments, exposure to extreme trauma, mood disorder, and psychosis "interact synergistically" preventing her from being able to act "rationally and logically." *Id.* at 24.

---

[2] As Dr. Woods explained, "The cerebellum is a region of the brain that plays an important role in motor control and some cognitive functions such as attention and language and in regulating fear and pleasure." *Id.*

According to Dr. Woods, prior to the announcement of her execution date, the symptoms of Ms. Montgomery's illnesses had largely been controlled at FMC Carswell, due to three interactive factors: "1) a highly structured and predictable environment; 2) a stable community wherein she is largely surrounded by supportive female companions and where her exposure to the threat of sexual violence is greatly reduced; and 3) careful titration and monitoring of her regime of antipsychotic medications." Dkt. 11-12 at 35. The impact of her medication, in particular Risperdal,[3] an antipsychotic medication, when combined with a supportive community allowed her to function more successfully but did not resolve her underlying conditions. *Id.* at 40.

### C. Ms. Montgomery's Current Mental Condition

On October 16, 2020, the warden read Ms. Montgomery her execution warrant and she was removed from her community and activities and placed in a suicide cell. Dkt. 11-12 at 40–41. Dr. Woods believes that this disruption to her routine and the stress of learning of her impending execution have resulted in a resurgence of her symptoms. *Id.* at 35, 39.

Ms. Montgomery's attorneys have reported the following symptoms or behaviors:

- auditory hallucinations with self-attacking content (hearing her abusive mother's voice);

---

[3] Upon her arrival at FMC Carswell, Ms. Montgomery's medication regiment was modified "from a commonly used combination of mood stabilizer and anti-depressant to Risperdal, a medication used for its antipsychotic properties." Dkt. 11-6 at 18 (Woods Decl. 2013).

- sleep disturbances and nightmares of past sexual violence that are so disturbing she is unable to recount them;
- disruption in bodily functions related to elimination due to her perception of male guards' observation of her;
- distorted sense of reality (uncertainty about whether the infant she kidnapped is really her child; being unsure of what is real without access to her most trusted friend to confirm reality);
- religious delusions/hallucinations (believing God spoke with her through connect-the-dot puzzles, finding messages in a feather, seeing the moon in a location she found uncanny);
- gaps in consciousness of time passing due to periods of dissociating (staring blankly for prolonged periods without awareness, writing letters and then forgetting doing so);
- alterations in perception of the external world (feeling outside of herself as if she is "existing in a house in her mind");
- inappropriate affect, irritability, and emotional description; and
- distorted perceptions of reality evincing paranoia (believing a male psychologist stated to her, "Don't you just want to say 'fuck the government and kill yourself?'").

Dkt. 11-2 at 3–4; dkt. 16-1. Dr. Porterfield, Dr. Woods, and Dr. Kempke all testify that these behaviors indicate current psychosis. 11-12 at 3–4 (Dr. Porterfield: "manifestations of dissociation, disturbed thinking and likely psychosis"); *id.* at 39 (Dr. Woods: "a reemergence of psychotic symptomology" indicating that Ms. Montgomery has "lost contact with reality"); Dkt. 16-1 (Dr. Kempke: observations "indicate that Mrs. Montgomery is psychotic").

Based on reported observations, review of past materials, review of BOP medical records, and, in Dr. Kempke's case, her past observation of Ms. Montgomery experiencing psychosis, all three experts opine that Ms. Montgomery is presently unable to rationally understand the government's

rationale for her execution as required by *Ford*. Dkt. 11-12 at 4 (Dr. Porterfield), 41 (Dr. Woods); dkt. 16-1 at ¶ 17 (Dr. Kempke).

Neither Dr. Porterfield nor Dr. Woods has conducted an in-person evaluation of Ms. Montgomery since 2016 on account of the COVID-19 pandemic. Dkt. 11-12 at 3, 34. Both doctors acknowledge that an evaluation could be conducted by video. *Id.* at 4–5, 42. They express concern that their ability to detect Ms. Montgomery's psychiatric symptoms would be hindered by a video evaluation, especially since Ms. Montgomery's dissociative symptoms can be subtle and "often appear as absences, blank responses, silence, difficulty focusing, fatigue, attentional lapses and distractibility." *Id.* at 4–5, 42. Dr. Porterfield also expressed concern that "a remote evaluation of Mrs. Montgomery risks triggering her and leaving her in a compromised state that this evaluator would be unable to detect and properly address." *Id.* at 5.

The government disputes Dr. Woods and Dr. Porterfield's conclusion.[4] According to Dr. Christina Pietz, a forensic psychologist contracted by the U.S. Attorney's Office for the Western District of Missouri in anticipation of possible *Ford* litigation, "no professional evaluating competency should rely solely on [counsel-provided] information and historical clinical evaluations in making a determination as to current competency" because "competency (or incompetency) is a present-tense issue." Dkt. 13-3 at ¶ 16. Accordingly, Dr. Porterfield and Dr. Woods's "opinions as to current competency do not

[4] Dr. Kempke's declaration was filed with Ms. Montgomery's reply brief so the government did not have the opportunity to respond to it.

appear to have been based on sufficient, current facts or data to conform to any known professional standards for evaluating competency." *Id.* at ¶¶ 16–18. Dr. Pietz also notes that during the COVID-19 pandemic, she has conducted several mental competency evaluations remotely that she believes comports with professional standards. *Id.* at ¶ 9. Dr. Pietz opines that there is no "evidence that Mrs. Montgomery is suffering from a major mental illness that would impair her ability to comprehend her legal situation or interact with her attorneys." *Id.* at ¶ 12. Unlike Ms. Montgomery's experts, Dr. Pietz has never evaluated Ms. Montgomery in person. *Id.* at ¶ 8.

The government has also presented evidence contradicting Ms. Montgomery's allegation of present incompetency, including summary excerpts of BOP medical records, excerpts of transcripts of jail calls of Ms. Montgomery talking with family members and friends, and declarations by Dr. Pietz and Dr. Leslie Wheat, a BOP psychologist who serves as the Regional Psychology Services Administrator for the South Central Region. Dkts. 13-3; 13-4; 13-5; 13-6.

The government argues that the BOP medical records reflect a comprehension of her legal situation and impending execution. Dkt. 13-4 at ¶ 10 (summarizing interactions with BOP clinicians). Those records indicate that Ms. Montgomery reported feeling "great," positive, and hopeful about the future after her first execution date was vacated; reported sleeping poorly due to concern about the execution; and described not being forthcoming with BOP psychologists about her feelings on advice of her attorneys. *Id.*

In phone calls with relatives between August 6, 2020, and January 2, 2021, Ms. Montgomery discussed issues related to her crime and upcoming execution, including recalling the anniversary of her crime, discussing the possibility of her upcoming execution including plans for cremation, the delay of her execution due to her attorneys contracting COVID-19, and discussing her petition for clemency and other ongoing legal challenges. Dkt. 13-6.

## III. APPLICABLE LAW

### A. Standard for Stay of Execution

In deciding whether to stay an execution, the Court must consider: "(1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors . . . are the most critical." *Id.* Before entering a stay, the Court must also consider "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

### B. Standards for Claim of Incompetence

Under *Ford v. Wainwright*, 477 U.S. 399 (1986), and its progeny, "[t]he Eighth Amendment . . . prohibits the execution of a prisoner whose mental illness prevents [her] from 'rationally understanding' why the State seeks to impose that punishment." *Madison v. Alabama*, 139 S. Ct. 718, 722 (2019) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007)). "A prisoner's awareness of the State's

rationale for an execution is not the same as a rational understanding of it. *Ford* does not foreclose inquiry into the latter." *Panetti*, 551 U.S. at 959. While doctors and other experts can help a judge understand the prisoner's cognitive defects, "the sole inquiry for the court remains whether the prisoner can rationally understand the reasons for his death sentence." *Madison*, 139 S. Ct. at 728.

Under *Ford*, Ms. Montgomery's burden is to make a substantial showing that her "mental illness prevents [her] from 'rational[ly] understanding' why the [government] seeks to [execute her]." *Madison*, 139 S. Ct. at 722 (quoting *Panetti*, 551 U.S. at 959). The question is whether her "concept of reality is so impaired that [she] cannot grasp the execution's meaning and purpose or the link between [her] crime and its punishment." *Id.* (quotation marks and citation omitted). The "standard focuses on whether a mental disorder has had a particular *effect*: an inability to rationally understand why the [government] is seeking execution." *Madison*, 139 S. Ct. at 728 (emphasis original). "As *Ford* and *Panetti* recognize, a delusional disorder can be of such severity—can 'so impair the prisoner's concept of reality'—that someone in its thrall will be unable 'to come to grips with' the punishment's meaning." *Madison*, 139 S. Ct. at 729 (quoting *Panetti*, 551 U.S. at 958). If Ms. Montgomery makes a "'substantial threshold showing of insanity' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (quoting *Ford*, 477 U.S. at 426, 424).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Counsel argue that executing Ms. Montgomery without first providing the "fair hearing" required by *Ford* would violate her right to due process under the Fifth Amendment. To succeed on the Fifth Amendment claim, counsel must make a "'substantial threshold showing of insanity.'" *Panetti*, 551 U.S. at 950 (quoting *Ford*, 477 U.S. at 426). Counsel have made the required substantial threshold showing and, in doing so, demonstrated a strong likelihood of success on the Fifth Amendment claim.

Three experts—including Dr. Kempke, a retired BOP psychiatrist who treated Ms. Montgomery while she was in custody—have concluded that Ms. Montgomery's current mental state is so divorced from reality that she cannot rationally understand the government's rationale for her execution. Dkt. 16-1, at p. 2, ¶ 17 (Dr. Kempke); dkt. 11-2 at 4, ¶ 6 (Dr. Porterfield); *id.* at 41 (Dr. Woods).

The Court finds the experts' declarations reliable and sufficient to make the required threshold showing. The experts each relied on a combination of the relevant scientific literature, past direct observations of Ms. Montgomery, and descriptions of Ms. Montgomery's current behavior relayed by counsel. While the *Panetti* standard concerns the consequence, not the diagnoses of mental illness, *Madison*, 139 S. Ct. at 728, Ms. Montgomery's past conduct and diagnoses are relevant to assessing her current condition. *See Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1320 (11th Cir. 2013) ("[T]he history of [the petitioner's]

mental condition, the opinions of experts regarding it, and judicial decisions about it over the years are all relevant to a discussion of his present mental condition."). As discussed above, Dr. Woods has found that Ms. Montgomery has physical brain impairments, dkt. 11-6 at 5, and has diagnosed her with "Bipolar I Disorder, Most Recent Episode Depressed, Severe with Psychotic Features." *Id.* at 19. Dr. Porterfield found that Ms. Montgomery suffers from complex post-traumatic stress disorder (CPTSD), complex partial seizures and brain impairment, depression, and bipolar disorder. Dkt. 11-12 at 2. The prison psychiatrist who treated Ms. Montgomery in the three years preceding her trial diagnosed her with depression, bipolar disorder, and PTSD. Dkt. 11-10 at 2, 14–15. Ms. Montgomery's current behaviors are considered in this context.

Those current behaviors include, among other things, Ms. Montgomery

- experiencing auditory hallucinations;
- being unsure what is real;
- believing that a male psychologist stated to her, "Don't you just want to say 'fuck the government and kill yourself?'";
- expressing uncertainty about whether the infant she kidnapped is really her child;
- stating that God spoke with her through connect-the-dot puzzles;
- experiencing lapses of time, as evidenced by her staring blankly for prolonged periods; and
- reporting experiences of "feeling outside herself—as if watching from a distance."

*See* dkt. 11-2 at 3–4; dkt. 16-1.

While treating Ms. Montgomery in the past, Dr. Kempke personally observed her "in an acute dissociative psychotic state at least two times." Dkt. 16-1 at 1, ¶ 7. Dr. Kempke explains that many of Ms. Montgomery's behaviors indicate that she is again experiencing psychotic dissociation. *Id.* at 2, ¶¶ 14–17. Given Dr. Kempke's past direct observations of Ms. Montgomery experiencing a dissociative psychotic state, her opinions about Ms. Montgomery's current competencies are especially probative.

Dr. Kempke's conclusions are supported by those of Dr. Woods and Dr. Porterfield, both of whom have diagnosed Ms. Montgomery in the past. Dr. Woods opines that Ms. Montgomery's "grasp of reality has always been tenuous" and that her current symptoms indicate that she "is further disconnected from reality." Dkt. 11-12 at 41. Likewise, Dr. Porterfield opines that based on Ms. Montgomery's current behavior, in the context of past interactions, Ms. Montgomery's "concept of reality is [] impaired." *Id.* at 4, ¶ 6.

The respondent argues that none of Ms. Montgomery's experts' conclusions are reliable because they have not interviewed Ms. Montgomery in her current condition. But experts may rely on the statements of laypeople in forming opinions about Ms. Montgomery's mental state. *See, e.g.*, *United States v. Brownlee*, 744 F.3d 479, 481–82 (7th Cir. 2014) ("[A]n expert witness is permitted to rely on any evidence, whether it would be admissible or inadmissible if offered by a lay witness, that experts in the witness's area of expertise customarily rely on."). Indeed, each expert acknowledged that a direct interview would be useful for diagnosis, but that the descriptions of Ms. Montgomery's

current behavior, when coupled with their past treatment or evaluations, was sufficient to allow them to reach an opinion to a reasonable degree of scientific (or medical) certainty. Dkt. 11-12 at 4, ¶ 6; *id.* at 41; dkt. 16-1 at 2, ¶ 17.

The Court finds these experts' declarations satisfy the required preliminary showing that Ms. Montgomery's current mental state would bar her execution. *Ford* did not set a precise standard for competency, *Panetti*, 551 U.S. at 957, and the concept of "rational understanding" is hard to define. *Id.* at 959. While there similarly are no set criteria describing what constitutes a "substantial threshold showing," the record before the Court contains ample evidence that Ms. Montgomery's current mental state is so divorced from reality that she cannot rationally understand the government's rationale for her execution. Dkt. 16-1, at 2, ¶ 17 (Dr. Kempke); dkt. 11-2 at 4, ¶ 6 (Dr. Porterfield); *id.* at 41 (Dr. Woods). *See Panetti*, 551 U.S. at 950 (finding that petitioner had made substantial threshold showing); *see id.* at 970 (Thomas, J., dissenting) (noting that the majority found the "threshold showing" satisfied with one unsworn, one-page letter from a doctor and another one-page declaration from a law professor, both relying on the petitioner's past medical history).

The government presents relevant contrary evidence, including transcripts of Ms. Montgomery's recent phone conversations and reports from BOP staff observations. While this evidence certainly shows that Ms. Montgomery understands that she is supposed to be executed soon, it does not demonstrate that she rationally understands the "meaning and purpose of the punishment." *Madison,* 139 S. Ct. at 727. Moreover, "[a]s *Ford* and *Panetti* recognize, a

delusional disorder can be of such severity—can 'so impair the prisoner's concept of reality'—that someone in its thrall will be unable 'to come to grips with' the punishment's meaning." *Madison*, 139 S. Ct. at 729.

**B. Irreparable Injury**

Ms. Montgomery would be irreparably injured if the government executes her when she is not competent to be executed.

**C. Balancing Harms, Public Interest, and Equitable Concerns**

"'Both the [government] and the victims of crime have an important interest in the timely enforcement of a sentence.'" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). It is also in the public interest to ensure that the government does not execute a prisoner who due to her mental condition "cannot appreciate the meaning of a community's judgment." *Madison,* 139 S. Ct. at 727. "[I]f the Constitution renders the fact or timing of his execution contingent upon establishment of a further fact, then that fact must be determined with the high regard for truth that befits a decision affecting the life or death of a human being." *Panetti*, 551 U.S. at 948–49. A hearing has not been held to determine Ms. Montgomery's competence. Because Ms. Montgomery has made "a substantial threshold showing of insanity," she is entitled to a fair hearing. *Ford*, 477 U.S. at 426.

The government's primary equitable argument is that counsel should have filed this claim and motion for stay sooner. Indeed, "last-minute filings that are frivolous and designed to delay executions can be dismissed in the regular course." *Panetti*, 551 U.S. at 946. But counsel's filing is not frivolous. As

discussed elsewhere in this order, Ms. Montgomery has been diagnosed with physical brain impairments and multiple mental illnesses, and three experts are of the opinion that, based on conduct and symptoms reported to them by counsel, Ms. Montgomery's perception of reality is currently distorted and impaired.

Additionally, the timing is not unreasonable given Ms. Montgomery's deterioration, this case's procedural history and what's at stake. Ms. Montgomery's condition began to devolve when the government first announced her execution date. But within a month, the execution was stayed. Counsel believed, and the District of Columbia District Court agreed, that the January 12 execution date was unlawful. Not until January 1, 2021, was the January 12 execution date relatively set in stone, and counsel filed this petition one week later. It is also worth noting that a brief stay of execution was initially granted to provide counsel time to recover from debilitating COVID-19 symptoms that included extreme fatigue, impaired thinking and judgment, and inability to concentrate. *See Montgomery v. Barr*, No. 20-3261 (D.D.C. Nov. 19, 2020), 2020 WL 6799140 at *7.

While the Court is mindful about the possibility of strategic litigation, neither that possibility or the delay outweigh the need for the stay when counsel has made a threshold showing that Ms. Montgomery is presently incompetent to be executed. *Madison,* 139 S. Ct. at 727 ("Similarly, *Ford* and *Panetti* stated that it 'offends humanity' to execute a person so wracked by mental illness that he cannot comprehend the 'meaning and purpose of the punishment.'").

## V. CONCLUSION

Ms. Montgomery's motion to stay execution, dkt. [12], is **GRANTED** to allow the Court to conduct a hearing to determine Ms. Montgomery's competence to be executed. The Court will set a time and date for the hearing in a separate order in due course.

**SO ORDERED.**

Date: 1/11/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Brian Patrick Casey
U.S. ATTORNEY'S OFFICE
brian.casey@usdoj.gov

Amy D. Harwell
FEDERAL PUBLIC DEFENDER TNM
amy_harwell@fd.org

Kelley J. Henry
FEDERAL PUBLIC DEFENDER TNM
kelley_henry@fd.org

Lisa Nouri
lisanouri_atty@hotmail.com

# *** PUBLIC DOCKET ***

APPEAL,HABEAS

## U.S. District Court
## Southern District of Indiana (Terre Haute)
## CIVIL DOCKET FOR CASE #: 2:21-cv-00020-JPH-DLP

MONTGOMERY v. WARDEN OF USP TERRE HAUTE, IN et al
Assigned to: Judge James Patrick Hanlon
Referred to: Magistrate Judge Doris L. Pryor
Cause: 28:2241 Petition for Writ of Habeas Corpus (federal)

Date Filed: 01/08/2021
Jury Demand: None
Nature of Suit: 535 Death Penalty - Habeas Corpus
Jurisdiction: Federal Question

**Petitioner**

**LISA MARIE MONTGOMERY** represented by

**Amy D. Harwell**
FEDERAL PUBLIC DEFENDER TNM
810 Broadway
Suite 200
Nashville, TN 37203
615-293-5758
Fax: 615-736-5265
Email: amy_harwell@fd.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelley J. Henry**
FEDERAL PUBLIC DEFENDER TNM
810 Broadway, Suite 200
Nashville, TN 37203
615-337-0469
Fax: 615-736-5265
Email: kelley_henry@fd.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Nouri**
2526 Holmes St.
Kansas City, MO 64108
(816) 547-5625
Fax: (816) 416-7110
Email: lisanouri_atty@hotmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**WARDEN OF USP TERRE HAUTE, IN** represented by

**Brian Patrick Casey**
U.S. ATTORNEY'S OFFICE

400 E. 9th Street
Room 5510
Kansas City, MO 64106
816-426-4138
Email: brian.casey@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Respondent**

**MICHAEL CARVAJAL** represented by **Brian Patrick Casey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**JEFFREY ROSEN** represented by **Brian Patrick Casey**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/08/2021 | 1 | PETITION for Writ of Habeas Corpus *Pursuant to 18 U.S.C 2241*, filed by LISA MARIE MONTGOMERY. (Filing fee $5, receipt number 0756-6358336) (Attachments: # 1 1 - Civil Cover Sheet)(Henry, Kelley) (Entered: 01/08/2021) |
| 01/08/2021 | 2 | MOTION for Attorney(s) Kelley J. Henry to Appear pro hac vice (No fee paid with this filing), filed by Petitioner LISA MARIE MONTGOMERY. (Henry, Kelley) (Entered: 01/08/2021) |
| 01/08/2021 | 3 | MOTION for Attorney(s) Amy D. Harwell to Appear pro hac vice (No fee paid with this filing), filed by Petitioner LISA MARIE MONTGOMERY. (Attachments: # 1 Exhibit 1- Proposed order)(Harwell, Amy) (Entered: 01/08/2021) |
| 01/08/2021 | 4 | MOTION for Leave to Proceed in forma pauperis , filed by Petitioner LISA MARIE MONTGOMERY. (Attachments: # 1 1 - Certification of Trust Fund)(Henry, Kelley) (Entered: 01/08/2021) |
| 01/08/2021 | 5 | MOTION for Attorney(s) Lisa Nouri to Appear pro hac vice (Filing fee $100, receipt number 0756-6358362), filed by Petitioner LISA MARIE MONTGOMERY. (Attachments: # 1 1 - Proposed order)(Nouri, Lisa) (Entered: 01/08/2021) |
| 01/09/2021 | 6 | ORDER SETTING BRIEFING SCHEDULE AND DENYING AS MOOT MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS - Lisa Marie Montgomery is a federal inmate scheduled to be executed on January 12, 2021. She has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The respondent shall have through 11:59 p.m. Eastern time on January 10, 2021, to respond to the petition (and any accompanying motion to stay). The petitioner shall have through noon Eastern time on January 11, 2021, to file a reply. The petitioner's motion to proceed in forma pauperis, dkt. 4 , is DENIED as moot because the $5.00 filing fee has already been paid. The clerk is directed to provide notice to government counsel from Mrs. Montgomery's 28 U.S.C. § 2255 litigation at the email addresses listed below. Signed by Judge James Patrick Hanlon on 1/9/2021. (RSF) (Entered: 01/09/2021) |
| 01/09/2021 | 7 | ORDER - granting 2 Motion to Appear pro hac vice regarding Kelley J. Henry on behalf of Lisa Montgomery. Signed by Magistrate Judge Doris L. Pryor on 1/9/2021. (RSF) (Entered: 01/09/2021) |
| 01/09/2021 | 8 | ORDER - granting 3 Motion to Appear pro hac vice. Attorney Amy D. Harwell for |

| | | |
|---|---|---|
| | | LISA MARIE MONTGOMERY added. Signed by Magistrate Judge Doris L. Pryor on 1/9/2021. (RSF) (Entered: 01/09/2021) |
| 01/09/2021 | 9 | ORDER - granting 5 Motion to Appear pro hac vice. Attorney Lisa Nouri for LISA MARIE MONTGOMERY added. Signed by Magistrate Judge Doris L. Pryor on 1/9/2021. (RSF) (Entered: 01/09/2021) |
| 01/09/2021 | 10 | NOTICE of Appearance on behalf of Respondents (Casey, Brian) Modified on 1/9/2021 (RSF). (Entered: 01/09/2021) |
| 01/09/2021 | 11 | *Corrected Petition for Writ of Habeas Corpus*, filed by LISA MARIE MONTGOMERY. (No fee paid with this filing) (Attachments: # 1 Civil Cover Sheet, # 2 Appendix Appendix Index, # 3 Appendix 1 - Appendix Index, # 4 Appendix B - Part 1 2255 Hearing Exhibits, # 5 Appendix B - Part 2 2255 Hearing Exhibits, # 6 Appendix B - Part 3 2255 Hearing Exhibits, # 7 Appendix B - Part 4 2255 Hearing Exhibits, # 8 Appendix C - Part 1 2255 Hearing Testimony Transcripts, # 9 Appendix C - Part 2 2255 Hearing Testimony Transcripts, # 10 Appendix D - Trial Testimony Transcripts, # 11 Appendix E - Montgomery Medical Records, # 12 Appendix F - Expert Declarations) (Henry, Kelley) (Entered: 01/09/2021) |
| 01/09/2021 | 12 | MOTION to Stay *Execution Pending Final Disposition of her Petition for Writ of Habeas Corpus*, filed by Petitioner LISA MARIE MONTGOMERY. (Henry, Kelley) (Entered: 01/09/2021) |
| 01/10/2021 | 13 | Appendix of Exhibits in Support of Response in Opposition to Motion re 12 MOTION to Stay *Execution Pending Final Disposition of her Petition for Writ of Habeas Corpus and 11 Amended Petition for Writ of Habeas Corpus*, filed by Respondents MICHAEL CARVAJAL, JEFFREY ROSEN, WARDEN OF USP TERRE HAUTE, IN. (Attachments: # 1 Exhibit A - Cottrell Declaration Regarding Failure to Request Examination, # 2 Exhibit B - Buckner Declaration Regarding Phone Calls, # 3 Exhibit C - Dr. Pietz Declaration Regarding Professional Opinions, # 4 Exhibit D - Dr. Wheat Declaration Regarding BOP Psychology Records, # 5 Exhibit E - Excerpts from BOP Medical Records, # 6 Exhibit F - Excerpts of Transcripts of Jail Calls from Lisa Montgomery, # 7 Exhibit G - November Letter from Garrison to Henry Regarding Competency Claim, # 8 Exhibit H - Winter Declaration Regarding Execution Logistics, # 9 Exhibit I - Wear Declaration Regarding Authentication of BOP Records, # 10 Exhibit J - January 7 Letter from Henry, # 11 Exhibit K - January 8 Response from Hyle)(Casey, Brian) (Entered: 01/10/2021) |
| 01/10/2021 | 14 | RESPONSE IN OPPOSITION TO PETITION FOR HABEAS CORPUS 11 AND MOTION FOR STAY 12 filed by Respondents MICHAEL CARVAJAL, JEFFREY ROSEN, WARDEN OF USP TERRE HAUTE, IN. (Casey, Brian) Modified on 1/11/2021 - updated title (RSF). (Entered: 01/10/2021) |
| 01/11/2021 | 15 | REPLY TO RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR STAY OF EXECUTION 14 , filed by Petitioner LISA MARIE MONTGOMERY. (Henry, Kelley) Modified on - updated title 1/11/2021 (RSF). (Entered: 01/11/2021) |
| 01/11/2021 | 16 | APPENDIX re 11 Petition for Writ of Habeas Corpus *Appendices G-J* by LISA MARIE MONTGOMERY. (Attachments: # 1 Appendix G - Kempke Declaration, # 2 Appendix H - Harwell letter, # 3 Appendix I - Henry letter, # 4 Appendix J - Shields Declaration) (Henry, Kelley) Modified on 1/11/2021 - Created link to 15 (RSF). (Entered: 01/11/2021) |
| 01/11/2021 | 17 | ORDER GRANTING MOTION TO STAY EXECUTION PENDING A COMPETENCE HEARING - Petitioner Lisa Montgomery is scheduled to be executed |

| | | |
|---|---|---|
| | | tomorrow, January 12, 2021, at the United States Penitentiary in Terre Haute, Indiana (USP - Terre Haute). Ms. Montgomery has filed a petition for writ of habeas corpus pursuant to 18 U.S.C. § 2241, alleging that she is incompetent to be executed under Ford v. Wainwright, 477 U.S. 399 (1986), and a motion to stay execution. Ms. Montgomery's motion to stay execution, dkt. 12 , is GRANTED to allow the Court to conduct a hearing to determine Ms. Montgomery's competence to be executed. The Court will set a time and date for the hearing in a separate order in due course. (See Order.) Signed by Judge James Patrick Hanlon on 1/11/2021. (RSF) (Entered: 01/11/2021) |
| 01/11/2021 | 18 | NOTICE OF APPEAL as to 17 Order on Motion to Stay, filed by Respondents MICHAEL CARVAJAL, JEFFREY ROSEN, WARDEN OF USP TERRE HAUTE, IN. (No fee paid with this filing) (Casey, Brian) (Entered: 01/11/2021) |
| 01/11/2021 | 19 | Emergency MOTION to Stay re 17 Order on Motion to Stay , filed by Respondents MICHAEL CARVAJAL, JEFFREY ROSEN, WARDEN OF USP TERRE HAUTE, IN. (Casey, Brian) (Entered: 01/11/2021) |

**Case #: 2:21-cv-00020-JPH-DLP**